BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTDISTRICT LITIGATION

| | |
|---|---|
| IN RE KEYBANK DATA BREACH LITIGATION | MDL NO. 3056 |

**MEMORANDUM OF LAW IN RESPONSE TO MOTION OF PLAINTIFFS KAREN MARTIN AND MICHAEL MARTIN FOR TRANSFER AND CENTRALIZATION IN THE WESTERN DISTRICT OF PENNSYLVANIA PURSUANT TO 28 U.S.C. § 1407 AND IN SUPPORT OF KEYBANK DEFENDANTS' REQUEST FOR TRANSFER AND <u>CENTRALIZATION IN THE NORTHERN DISTRICT OF GEORGIA</u>**

James J. Pastore, Jr.
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: jjpastore@debevoise.com

*Counsel for Defendants KeyBank N.A. and KeyCorp*

i

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................... 1

STATEMENT OF FACTS............................................................................................................. 2

    A.    OSC DATA SECURITY INCIDENT ................................................................................ 2

    B.    ACTIONS FILED AGAINST OSC AND KEYBANK ...................................................... 3

        1.    *Bozin* Action ................................................................................................. 3

        2.    *Samsel* Action .............................................................................................. 3

        3.    *Urciuoli* Action ............................................................................................ 4

        4.    *Marlowe* Action ........................................................................................... 4

        5.    *Archer* Action .............................................................................................. 5

        6.    *Martin* Action .............................................................................................. 5

        7.    *Brouty* Action............................................................................................... 6

        8.    *Pittman* Action ............................................................................................ 6

    C.    ACTIONS FILED AGAINST OSC AND FULTON BANK ................................................ 7

ARGUMENT .................................................................................................................................. 8

    A.    TRANSFER AND CONSOLIDATION IS APPROPRIATE UNDER 28 U.S.C. § 1407(A). ........................................................................................................................ 8

    B.    THE RELEVANT FACTORS STRONGLY FAVOR CENTRALIZATION IN THE NORTHERN DISTRICT OF GEORGIA. ........................................................................... 9

        1.    Location of Defendants' Headquarters ............................................... 9

        2.    Location of Documents and Witnesses ............................................. 10

        3.    Location of the Majority of Filed Cases ........................................... 11

        4.    Availability of Judicial Resources ..................................................... 12

        5.    Location of Judge with Substantial Expertise ................................... 13

    C.    PENNSYLVANIA IS NOT A CONVENIENT FORUM. ..................................................... 14

    D.    THE MDL SHOULD BE CAPTIONED "IN RE OSC DATA BREACH LITIGATION." ................................................................................................................ 15

CONCLUSION ............................................................................................................................. 15

Defendants KeyBank N.A. and KeyCorp (together, "KeyBank") respectfully submit this memorandum of law in response to Karen and Michael Martin's ("Movants") motion for transfer and consolidation in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1407 (the "MDL Motion"), and in support of KeyBank's request for transfer and consolidation in the Northern District of Georgia.

## PRELIMINARY STATEMENT

KeyBank agrees that transfer and consolidation is appropriate under Section 1407. Thus far, ten putative class actions have been filed in three districts arising from the same data security incident. This Panel routinely grants Section 1407 motions in connection with data breach litigations. However, the relevant factors overwhelmingly favor centralization in the Northern District of Georgia, not the Western District of Pennsylvania, as advocated by Movants.

Movants inaccurately caption the proposed multi-district litigation ("MDL") "In re: KeyBank Data Breach Litigation." In reality, the data security incident that gave rise to these actions occurred on the systems of Defendant Overby-Seawell Company ("OSC"), not on KeyBank's systems. OSC is a company located in Georgia that provides insurance services to its clients, which entails storing clients' customer data on its systems. KeyBank is one of the OSC clients impacted by the data security incident. Multiple actions have been filed alleging negligence by OSC in connection with the incident, naming as co-defendants either KeyBank or Fulton Bank, N.A ("Fulton Bank"), another OSC client: five in the Northern District of Georgia, all pending before the Honorable Steven D. Grimberg; three in the Northern District of Ohio; and two (filed by the same counsel) in the Western District of Pennsylvania.

Because the data security incident occurred on OSC's systems, the witnesses and documents relevant to plaintiffs' claims overwhelmingly will be found in Georgia. Other factors

1

also favor consolidation in the Northern District of Georgia. That district has greater judicial resources than the Western District of Pennsylvania to efficiently oversee an MDL. Moreover, Judge Grimberg has substantial cybersecurity experience and is well-positioned to effectively preside over an MDL centered on technical data security issues. By contrast, the Western District of Pennsylvania has comparatively little connection to the events at issue.

For these reasons and those stated below, KeyBank respectfully requests that the actions filed in the Northern District of Ohio and the Western District of Pennsylvania be transferred and consolidated with the actions pending before Judge Grimberg in the Northern District of Georgia under the caption "In re OSC Data Breach Litigation."

## STATEMENT OF FACTS

**A.  OSC DATA SECURITY INCIDENT**

OSC is a technology services company with a principal place of business in Georgia. *See Martin v. KeyBank National Association, KeyCorp, and Overby-Seawell Company*, No. 2:22cv-01346-RJC, Dkt. No. 1 ("*Martin* Compl.") ¶¶ 29–30. KeyBank sells and services commercial and residential mortgage loans and has a principal place of business in Ohio. *Id.* ¶ 22. OSC provides services to KeyBank, including ongoing verification that the bank's residential mortgage customers are maintaining required property insurance. *Id.* ¶ 30. On August 4, 2022, OSC notified KeyBank that an unauthorized third party had gained remote access to OSC's network and acquired personal and financial information for certain KeyBank customers residing on OSC's systems. *Id.* ¶¶ 1–2. On August 26, 2022, KeyBank notified impacted customers. *Id.* ¶ 71.

To date, KeyBank customers have filed eight actions against OSC and KeyBank in connection with the OSC data security incident (the "OSC Actions"). In addition, customers of

Fulton Bank, another OSC client impacted by the data security incident, have filed two actions against OSC and Fulton Bank (the "Fulton Bank Actions" and, together with the OSC Actions, the "Actions").

B.   ACTIONS FILED AGAINST OSC AND KEYBANK

   1.   *Bozin* Action

On August 30, 2022, a putative class action captioned *Bozin v. KeyBank National Association and Overby-Seawell Company*, No. 1:22-cv-01536-CEF, was filed in the Northern District of Ohio and assigned to the Honorable Charles Esque Fleming. *See* Dkt. No. 1. A First Amended Complaint was filed on September 14, 2022. Dkt. No. 11. Plaintiffs allege that they or individuals they represent provided personal and financial information in connection with mortgage loans originated or serviced by KeyBank, and that their information was compromised in the OSC data security incident. *Id.* ¶¶ 2, 10–13. Plaintiffs allege that, as a result of the incident, they are at increased risk of fraud and identity theft and lost time and money taking steps to protect themselves from the consequences of the incident. *Id.* ¶¶ 86–93. Plaintiffs bring claims for negligence and negligence *per se*. *Id.* ¶¶ 106–126. Plaintiffs are citizens of Georgia, New York, and Ohio. *Id.* ¶¶ 9–13.

   2.   *Samsel* Action

On September 6, 2022, a putative class action captioned *Samsel v. Overby-Seawell Co. and KeyBank, N.A.*, No. 1:22-cv-03593-SDG, was filed in the Northern District of Georgia and assigned to Judge Grimberg. *See* Dkt. No. 1. Plaintiff alleges that he provided personal and financial information in connection with a mortgage loan originated or serviced by KeyBank, and that his information was compromised in the OSC data security incident. *Id.* ¶¶ 33–35. Plaintiff alleges that, as a result of the incident, he is at increased risk of fraud and identity theft

and lost time and money taking steps to protect himself from the consequences of the incident. *Id*. ¶¶ 38–41. Plaintiff brings claims against OSC and KeyBank for negligence and negligence *per se*, and against KeyBank for breach of contract. *Id*. ¶¶ 76–105. Plaintiff is a citizen of Ohio. *Id*. ¶ 4.

3. *Urciuoli* Action

On September 8, 2022, a putative class action captioned *Urciuoli v. Overby-Seawell Co., KeyBank*, *N.A.*, *and KeyCorp*, No. 1:22-cv-01598-SO, was filed in the Northern District of Ohio and assigned to the Honorable Solomon Oliver, Jr. *See* Dkt. No. 1. Plaintiffs allege that they provided personal and financial information in connection with mortgage loans serviced by KeyBank, and that their information was compromised in the OSC data security incident. *Id*. ¶¶ 21, 36, 129. Plaintiffs allege that, as a result of the incident, they are at increased risk of fraud and identity theft and lost time and money taking steps to protect themselves from the consequences of the incident. *Id*. ¶¶ 177–86. Plaintiffs bring claims against OSC and KeyBank for negligence, negligence *per se*, violations of Oregon consumer protection statutes, and a claim against KeyBank for breach of implied contract. *Id*. ¶¶ 195–261. Plaintiffs are citizens of Oregon and Pennsylvania. *Id*. ¶¶ 16–17, 29–30.

4. *Marlowe* Action

On September 9, 2022, a putative class action captioned *Marlowe v. Overby-Seawell Co. and KeyBank, N.A.*, No. 1:22-cv-03648-SDG, was filed in the Northern District of Georgia and assigned to Judge Grimberg. *See* Dkt. No. 1. Plaintiff alleges that he provided personal and financial information in connection with a mortgage loan and home equity line of credit provided by KeyBank, and that his information was compromised in the OSC data security incident. *Id*. ¶¶ 67, 69. Plaintiff alleges that, as a result of the incident, he is at increased risk of fraud and

identity theft and lost time and money taking steps to protect himself from the consequences of the incident. *Id.* ¶¶ 71, 74–75. Plaintiff brings a claim against OSC and KeyBank for negligence and a claim against KeyBank for breach of implied contract. *Id.* ¶¶ 93–141. Plaintiff is a citizen of Ohio. *Id.* ¶ 18.

5. ***Archer* Action**

On September 20, 2022, a putative class action captioned *Archer v. Overby-Seawell Co. and KeyBank, N.A.*, No. 1:22-cv-03780-SDG, was filed in the Northern District of Georgia and assigned to Judge Grimberg. *See* Dkt. No. 1. Plaintiffs allege that they provided personal and financial information in connection with mortgage loans originated or serviced by KeyBank, and that their information was compromised in the OSC data security incident. *Id.* ¶¶ 6, 27–28. Plaintiffs allege that, as a result of the incident, they are at increased risk of fraud and identity theft and lost time and money taking steps to protect themselves from the consequences of the incident. *Id.* ¶ 134. Plaintiffs bring claims for negligence, intrusion upon seclusion, unjust enrichment, breach of implied contract, and violations of Washington and New York consumer protection statutes. *Id.* ¶¶ 177–275. Plaintiffs are citizens of New York and Washington State. *Id.* ¶¶ 27–28.

6. ***Martin* Action**

On September 30, 2022, a putative class action captioned *Martin v. KeyBank National Association, KeyCorp, and Overby-Seawell Company*, No. 2:22-cv-01346-RJC, was filed in the Western District of Pennsylvania and assigned to the Honorable Robert J. Colville. *See Martin* Compl. Plaintiffs allege that they provided personal and financial information in connection with a mortgage loan originated or serviced by KeyBank, and that their information was compromised in the OSC data security incident. *Id.* ¶¶ 15, 106. Plaintiffs allege that, as a result

5

of the incident, they are at increased risk of fraud and identity theft and lost time and money taking steps to protect themselves from the consequences of the incident. *Id*. ¶¶ 141, 145–46. Plaintiffs bring claims for negligence, negligence *per se*, and breach of implied contract. *Id*. ¶¶ 158–95. Plaintiffs are citizens of Pennsylvania. *Id*. ¶¶ 9–10.

7.     ***Brouty* Action**

On October 19, 2022, after the MDL Motion was filed, a putative class action captioned *Brouty v. KeyBank National Association, KeyCorp, and Overby-Seawell Company*, No. 1:22-cv-01885, was filed in the Northern District of Ohio and assigned to Judge Fleming. *See* Dkt. No. 1. Plaintiffs allege that they provided personal and financial information in connection with a mortgage loan, and that their information was compromised in the OSC data security incident. *Id*. ¶¶ 28, 34, 41, 57. Plaintiffs allege that, as a result of the incident, they are at increased risk of fraud and identity theft and lost time and money taking steps to protect themselves from the consequences of the incident. *Id*. ¶ 106–07. Plaintiffs bring claims for negligence, invasion of privacy, and for violations of Indiana and New York consumer protection statutes. *Id*. ¶¶ 127–47, 157–201. Plaintiffs are citizens of Indiana and New York. *Id*. ¶¶ 28, 34, 41.

8.     ***Pittman* Action**

On October 26, 2022, after the MDL Motion was filed, counsel for the *Martin* plaintiffs filed a second putative class action in the Western District of Pennsylvania, captioned *Pittman v. KeyBank National Association, KeyCorp, and Overby-Seawell Company*, No. 2:22-cv-01513-RJC, which was assigned to Judge Colville. *See* Dkt. No. 1. Plaintiff alleges that he provided personal and financial information in connection with a loan serviced by KeyBank, and that his information was compromised in the OSC data security incident. *Id*. ¶¶ 13, 103. Plaintiff alleges that, as a result of the incident, he is at increased risk of fraud and identity theft and lost

6

time and money taking steps to protect himself from the consequences of the incident. *Id*. ¶¶ 138, 140. Plaintiff brings claims for negligence, negligence *per se*, and breach of implied contract. *Id*. ¶¶ 155–192. Plaintiff is a resident of Pennsylvania. *Id*. ¶ 9.

## C.  ACTIONS FILED AGAINST OSC AND FULTON BANK

On September 14, 2022, a putative class action captioned *Sheckard v. Overby-Seawell Company and Fulton Bank, N.A.*, No. 1:22-cv-03708-SDG, was filed in the Northern District of Georgia and assigned to Judge Grimberg. On September 26, 2022, a putative class action captioned *West v. Overby-Seawell Co. and Fulton Bank, N.A.*, No. 1:22-cv-03858-SDG, was filed in the Northern District of Georgia and assigned to Judge Grimberg.

The *Sheckard* and *West* plaintiffs allege that they provided personal and financial information in connection with services provided by Fulton Bank, which is headquartered in Pennsylvania, and that their information was compromised in the OSC data security incident. *Sheckard* Dkt. No. 1 ("*Sheckard* Compl.") ¶ 8; *West* Dkt. No. 1 ("*West* Compl.") ¶¶ 25, 124. Plaintiffs allege that, as a result of the incident, they are at increased risk of fraud and identity theft and lost time and money taking steps to protect themselves from the consequences of the incident. *Sheckard* Compl. ¶ 40; *West* Compl. ¶¶ 131–34. The *Sheckard* plaintiffs bring claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, and violations of Pennsylvania consumer protection statutes. *Sheckard* Compl. ¶¶ 52–99. The *West* plaintiffs bring claims for negligence, invasion of privacy, breach of implied contract, and unjust enrichment. *West* Compl. ¶¶ 150–219.

# ARGUMENT

A.  **TRANSFER AND CONSOLIDATION IS APPROPRIATE UNDER 28 U.S.C. § 1407(A).**

This Panel may transfer actions pursuant to 28 U.S.C. § 1407(a) if it determines that: (1) "one or more common questions of fact are pending in different districts;" (2) transfer would serve "the convenience of parties and witnesses;" and (3) transfer "will promote the just and efficient conduct of such actions."

There can be little dispute that all three criteria are satisfied.  Ten putative class actions have been filed thus far in three districts all raising similar factual allegations and asserting similar claims arising from the OSC data security incident.  As this Panel concluded in another data breach litigation:

> We find that common factual questions in all actions unquestionably arise from the same recently-disclosed breach of AMCA's systems . . . through which an unauthorized user allegedly gained access to patients' personal and financial information . . . . Thus, discovery and motions concerning AMCA's data security practices, how the unauthorized access occurred, and the investigation into the breach will be substantially the same in all actions.

*In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019).  The same is true here.

Given the overlapping allegations and claims, centralization will be far more efficient than duplicative actions strewn across multiple districts, and will best serve the interests of judicial economy by preserving resources and avoiding conflicting pretrial rulings.  *See, e.g.*, *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1363–64 (J.P.M.L. 2020) (granting Section 1407 motion where "putative class actions present[ed] common factual questions concerning an alleged ransomware attack and data security breach"); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374–75 (J.P.M.L. 2019) (consolidating actions arising from breach of Marriott's Starwood guest reservation database and

8

noting "[t]he factual overlap among these actions is substantial, as they all arise from the same data breach").

To KeyBank's knowledge, no party disputes that consolidation is appropriate. However, counsel were unable to agree on a transfer strategy pursuant to 28 U.S.C. § 1404, which makes Section 1407 an appropriate alternative mechanism.

### B. THE RELEVANT FACTORS STRONGLY FAVOR CENTRALIZATION IN THE NORTHERN DISTRICT OF GEORGIA.

Contrary to the arguments presented by Movants, the OSC Actions should be transferred and consolidated before Judge Grimberg in the Northern District of Georgia, not in the Western District of Pennsylvania. All of the relevant factors weigh in favor of centralization in the Northern District of Georgia, where the core events occurred and the majority of witnesses and documents will be located. The Western District of Pennsylvania, by contrast, has no connection to the events underlying the OSC data security incident.

Although no single factor is dispositive, this Panel has considered the following factors when adjudicating Section 1407 motions: (*i*) where the defendants are headquartered; (*ii*) where the relevant documents and witnesses are located; (*iii*) where a majority of the pending actions have been filed; (*iv*) whether the transferee district is equipped with the resources that the litigation will require; and (*v*) whether any of the judges before whom cases are pending has the requisite experience to preside over the MDL.

Each of these factors strongly favors centralization in the Northern District of Georgia.

#### 1. Location of Defendants' Headquarters

The location of the defendants' headquarters weighs in favor of transfer to the Northern District of Georgia. OSC, the defendant that experienced the data security incident giving rise to

9

the claims in these actions, is headquartered in Georgia. As such, relevant evidence will be centered with OSC. *See, e.g., Blackbaud*, 509 F. Supp. 3d at 1364 (centralizing in district where data breach defendant was headquartered); *Marriott Int'l, Inc.*, 363 F. Supp. 3d at 1374–75 (centralizing in district where data breach defendant was headquartered). Neither OSC nor KeyBank is headquartered in Pennsylvania. The fact that KeyBank is headquartered in Ohio carries little weight, because the data security incident did not occur on KeyBank's systems.

2.  **Location of Documents and Witnesses**

Movants contend that "documents and witnesses are most likely going to be located in numerous geographic locations" and that "there is no clear center of gravity in or nexus to one district." MDL Motion at 10–11. In fact, the majority of relevant documents and witnesses will be located in Georgia. The event giving rise to plaintiffs' claims is the OSC data security incident. Plaintiffs' claims center on allegations of negligence arising from that incident. Indeed, Movants' own complaint acknowledges the centrality of OSC's systems to their claims: they allege that the data security incident and subsequent investigation occurred at OSC; that OSC enlisted the assistance of third-party cybersecurity experts; that OSC notified the FBI of the incident; and that OSC undertook remediation steps in response to the incident, such as deploying enhanced security monitoring tools. *Martin* Compl. at ¶¶ 41–42.

Witnesses and documents pertinent to plaintiffs' claims will therefore be located primarily with OSC in Georgia, which heavily favors centralization in that district. *Am. Med. Collection Agency, Inc.*, 410 F. Supp. at 1354 (noting relevant factual questions include defendant's data security practices and whether they met industry standards; how the unauthorized access occurred; when defendant knew or should have known of the breach; the investigation into the breach; and the alleged delay disclosing the breach); *Marriott Int'l, Inc.*,

363 F. Supp. 3d at 1375 (centralizing in district where data breach defendant was headquartered and where relevant witnesses and documents would be located); *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322, 1326 (J.P.M.L. 2017) (same); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016) (same); *In re Home Depot, Inc. Customer Data Sec. Breach Litig.*, 65 F. Supp. 3d 1398, 1400 (J.P.M.L. 2014) (same).

The only potentially relevant connection to Pennsylvania is that five of the 19 plaintiffs in the OSC Actions are citizens of Pennsylvania. But that fact carries little weight. Although individual plaintiffs' claims of injury and damages may be subject to discovery, plaintiffs are scattered across seven states. That some plaintiffs are in Pennsylvania does not tip the balance toward that state as opposed to any other state where plaintiffs are located, and in no event displaces Georgia as the center of gravity.

### 3. Location of the Majority of Filed Cases

Three of the eight cases filed against OSC and KeyBank are pending in the Northern District of Georgia; three in the Northern District of Ohio; and two (filed by the same counsel) in the Western District of Pennsylvania. However, the two Fulton Bank Actions—which arise from the same OSC data security incident—are also pending in the Northern District of Georgia. Thus, a plurality of the Actions arising from the OSC data security incident are in the Northern District of Georgia before the same judge, which weighs in favor of consolidation in that district. *See Marriott Int'l, Inc.*, 363 F. Supp. 3d at 1375 (consolidating in district where "more actions are pending there than in any other district").

The fact that two actions were filed in the Western District of Pennsylvania does not provide a compelling reason to favor that district. The *Pittman* plaintiff—who filed the most

11

recent action after the MDL Motion was filed—is represented by the same counsel as Movants. It is difficult to identify any reason why the *Pittman* plaintiff would not have been included in an amended complaint in the *Martin* action other than counsel's desire to increase the number of actions pending in the Western District of Pennsylvania in an effort to put a thumb on the scale. The Panel should give this second action little weight in its analysis.

4. **Availability of Judicial Resources**

Contrary to Movants' assertion, the Northern District of Georgia is a more suitable venue than the Western District of Pennsylvania because it is better "equipped with resources" to administer an MDL. *In re Peanut Crop Ins. Litigation*, 342 F. Supp. 2d at 1354 (J.P.M.L 2004). As of October 14, 2022, only three MDLs were pending in the Northern District of Georgia, whereas five were pending in the Western District of Pennsylvania. *See MDL Statistics Report – Distribution of Pending MDL Dockets by District*, U.S. Judicial Panel on Multidistrict Litigation, at 2, 4.

Further, Movants cite data showing that, as of June 30, 2022, the median number of months from filing to disposition was nearly two months longer in the Western District of Pennsylvania than in the Northern District of Georgia. *See* MDL Motion at 13–14 (indicating five months in the Northern District of Georgia and 6.8 months in the Western District of Pennsylvania). As of June 30, 2020, the median number of months from filing to trial was nearly four months longer in the Western District of Pennsylvania than in the Northern District of Georgia. *Id.* (indicating 39.1 months in the Northern District of Georgia and 42.9 months in the Western District of Pennsylvania). The fact that the Panel has assigned three MDLs in the past three years to the Western District of Pennsylvania, *see* MDL Motion at 12, underscores that the Northern District of Georgia likely is better equipped to handle this MDL.

5.     **Location of Judge with Substantial Expertise**

Judge Grimberg, before whom the cases in the Northern District of Georgia are pending, is well-positioned to address the complex data security issues presented in the Actions. Judge Grimberg served as an Assistant United States Attorney in the Northern District of Georgia from 2010 to 2017, during which time he led the Cyber-Crime Unit within the Northern District of Georgia U.S. Attorney's Office. *Questionnaire for Judicial Nominees*, Steven Daniel Grimberg Questionnaire, United States Senate Committee on the Judiciary, at 19. In that role, Judge Grimberg was "solely responsible for overseeing all cyber-related investigations and prosecutions," which "encompassed not only computer hacking cases, but also national security and terrorism investigations, as well as data breaches resulting in the theft or loss of trade secrets, intellectual property, and proprietary information." *Id.* at 20. Judge Grimberg has also presented and appeared on several panels related to cybersecurity since 2015, completed the Cyber Boot Camp program run by the FBI's cyber investigative Joint Task Force, and has published on cybersecurity issues. *Id.*, at 4, 8–12.

Judge Grimberg's experience weighs in favor of consolidation in the Northern District of Georgia, where the MDL can be efficiently overseen by a jurist with substantial relevant knowledge. *See, e.g., In re Watson Fentanyl Patch Prod.*, 883 F. Supp. 2d 1350, 1352 (J.P.M.L. 2012) (finding judge familiar with cases involving fentanyl patches "ideally situated" to oversee MDL).

In sum, the factors that this Panel typically considers point convincingly to centralization in the Northern District of Georgia.

## C.     PENNSYLVANIA IS NOT A CONVENIENT FORUM.

Movants assert that Pennsylvania is a "central meeting point" because it "borders Ohio and is in between Ohio and Georgia." MDL Motion at 11, 14. While perhaps an accurate description of the map, this hardly supports centralization in Pennsylvania when the bulk of evidence will be located in Georgia and given that the 19 plaintiffs in the OSC Actions are dispersed across seven states.

None of the cases cited by Movants is to the contrary, as each supports transfer to the district where documents and witnesses are likely to be located. *See In re Diisocyanates Antitrust, Litig.*, 341 F. Supp. 3d 1376, 1378 (J.P.M.L. 2018) (finding Western District of Pennsylvania appropriate because defendants were headquartered there (or nearby) and relevant documents and witnesses would likely be located there); *In re Tribune Co. Fraudulent Conveyance Litig.*, 831 F. Supp. 2d 1371, 1372 (J.P.M.L. 2018) (centralizing in district where documents and witnesses were likely located); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 276 F. Supp. 3d 1382, 1383 (J.P.M.L. 2017) (transferring to Northern District of Ohio where plaintiffs located in several states all consented to same district); *In re Anthem, Inc. Customer Data Sec. Breach Litig.*, 109 F. Supp. 3d 1364 (J.P.M.L. 2015) (finding Northern District of California appropriate because significant number of actions were pending there and defendant had significant ties to the state).

Moreover, to the extent a district's characterization as a "central meeting point" is persuasive, this Panel has held that the Northern District of Georgia "is easily accessible" for parties in a data breach litigation that, like this one, "is nationwide in scope." *Home Depot*, 65 F. Supp. 3d at 1400.

D.  **THE MDL SHOULD BE CAPTIONED "IN RE OSC DATA BREACH LITIGATION."**

Assuming the Panel grants the MDL Motion, the appropriate caption is "*In re OSC Data Breach Litigation.*"  *See* J.P.M.L. Rule 3.2(a)(i) ("[C]ounsel shall use an appropriate description.").  The data security incident occurred on OSC's systems, not KeyBank's systems, and affected OSC clients in addition to KeyBank, including Fulton Bank.  Accordingly, the caption proposed by Movants is both inaccurate and misleading.

## CONCLUSION

For all of the foregoing reasons, KeyBank respectfully requests that the OSC Actions be transferred and consolidated before Judge Steven D. Grimberg in the Northern District of Georgia under the caption "*In re OSC Data Breach Litigation.*"

Dated:  November 8, 2022

By: */s/ James J. Pastore, Jr.*

James J. Pastore, Jr.
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: jjpastore@debevoise.com

*Counsel for Defendants KeyBank N.A. and KeyCorp*

15

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that, pursuant J.P.M.L Rule 4.1(a), on November 8, 2022, I electronically transmitted the attached document with the J.P.M.L's CM/ECF system, which will serve each of the parties to this MDL electronically.

Date:   November 8, 2022

/s/ James J. Pastore, Jr.
James J. Pastore, Jr.
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: jjpastore@debevoise.com

*Counsel for Defendants KeyBank N.A. and KeyCorp*